

# NUMBER 13-13-00609-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

WENDY LEE KYLE,                                                          Appellant,

v.

H.T. STRASBURGER, INDIVIDUALLY
AND IN HIS CAPACITY AS A MEMBER
OF THE BOARD OF DIRECTORS OF
FIDELITY BANK OF TEXAS, AND AS
A MEMBER OF TUITION LLC, SHIRLEY
STRASBURGER, INDIVIDUALLY AND IN HER
CAPACITY AS VICE-CHAIR OF THE BOARD
OF DIRECTORS OF FIDELITY BANK OF TEXAS,
AND AS A MEMBER OF TUITION LLC; TERRY
WHITELY, INDVIDUALLY AND IN HIS CAPACITY
AS PRESIDENT AND MEMBER OF THE BOARD
OF DIRECTORS FOR FIDELITY BANK OF TEXAS;
FIDELITY BANK OF TEXAS, A BANK CHARTERED
UNDER THE LAWS OF THE STATE OF TEXAS;
AND TUITION LLC, A LIMITED LIABILITY
CORPORATION ORGANIZED UNDER THE LAWS
OF THE STATE OF TEXAS,                                                Appellees.

## On appeal from the 250th District Court
of Travis County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Garza
## Memorandum Opinion by Chief Justice Valdez[1]

Appellant, Wendy Kyle, appeals the trial court's summary judgment in favor of appellees, which include two financial institutions and the officers of those institutions (collectively "Fidelity").[2]  By five issues, appellant contends that Fidelity failed to (1) establish entitlement to a no-evidence summary judgment regarding her fraud in a real estate transaction cause of action (issue one); (2) establish every element of its affirmative defenses (issues two, three, and four); and (3) negate the reliance element of her claims for violations of the Texas Finance Code and the Deceptive Trade Practices Act ("DTPA") (issue five).[3]  We affirm.

## I.    BACKGROUND

On May 24, 2004, appellant's ex-husband, Mark Kyle, obtained a 1.1 million dollar home equity loan from Fidelity, a loan which was secured by the couple's homestead.  It is undisputed that Mark's employee signed appellant's name on the loan documents, including the promissory note, deed of trust, and disclosure statements.[4]  Fidelity alleges

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

[2] Appellees are H.T. Strasburger, individually and in his capacity as chair of the board of directors of Fidelity Bank of Texas, and as a member of Tuition LLC; Shirley Strasburger, individually and in her capacity as vice-chair of the board of directors of Fidelity Bank of Texas, and as a member of Tuition LLC; Terry Whitley, individually and in his capacity as president and member of the board of directors for Fidelity Bank of Texas; Fidelity Bank of Texas, a bank chartered under the laws of the state of Texas; and Tuition LLC, a limited liability corporation organized under the laws of the state of Texas.

[3] We have renumbered and reorganized appellant's issues.

[4] Whoever signed the documents used appellant's passport as identification.

that appellant consented to her friend signing the document[5]; however, appellant claims that she did not consent to the forgery and learned of the signature later. In late 2009, appellant filed for divorce from Mark. During the divorce proceedings, Mark failed to pay ad valorem taxes and Fidelity declared the note on the loan in default. Threatened with foreclosure, attorneys for Mark and appellant attempted to negotiate a forbearance agreement with Fidelity that would temporarily abate the threatened foreclosure of the couple's homestead. Appellant refused to sign a document requiring her to verify that she had signed the original loan documents. Terry Whitley, Fidelity's president, testified that he did not know whether Fidelity was aware that appellant had not signed the original loan documents.

On March 24, 2011, Fidelity began foreclosure proceedings on the property. The foreclosure application included Whitley's affidavit stating that appellant and Mark had executed the loan agreement. Appellant filed a verified denial in response to the foreclosure proceedings stating that she had not signed the loan agreement and that she had not given anyone authority to sign on her behalf. Fidelity began investigating whether appellant had actually signed the loan documents. However, according to appellant, Fidelity continued to pursue foreclosure against the couple's homestead and represented to others that appellant had executed the home-equity loan documents. Fidelity also "sent notice of the pending non-judicial foreclosure sale of the [couple's] homestead to the Internal Revenue Service," asserting "that Mark and [appellant] had executed the home-equity loan and that Fidelity had scheduled the foreclosure sale on August 2, 2011."

---

[5] Fidelity provided Mark's testimony that appellant agreed to the loan and allowed her friend to sign the loan documents. Fidelity also provided as summary judgment evidence, an email dated June 8, 2004, from appellant to Mark stating, "I asked you for $5,000. of the 1.??? million that we took out of the house but haven't had the courtesy of a reply."

On June 2, 2011, pursuant to a Rule 11 agreement with Mark and as part of the final divorce decree, appellant conveyed her interest in the home to Mark by special warranty deed, thereby making Mark the sole owner of the home. Fidelity points out that appellant testified that she signed the Rule 11 agreement and accompanying documents based on the advice of her attorneys and confirmed that she did not rely on the advice of anyone else. However, appellant claims that she sold the property because she did not want to be part of the foreclosure proceeding. The divorce court entered a final judgment of divorce decreeing that the home was Mark's sole and separate property and appellant signed the judgment as "approved and consented as to both form and substance." On June 21, 2011, Fidelity nonsuited appellant from the foreclosure proceedings.

On October 13, 2011, Fidelity sold the note and assigned the lien to Tuition LLC, a corporation formed by the Strasburgers for, according to appellant, "the sole purpose of holding the note and lien." Appellant claims that Tuition LLC had been attempting to collect past-due payments on the home-equity note from her and has instituted foreclosure proceedings naming her as a party.

On October 3, 2012, appellant filed suit against Fidelity and Mark asserting claims for fraudulent filing of a financing statement, statutory fraud in a real estate transaction, securing the execution of a document by deception, common law fraud, negligent misrepresentation, "aiding and abetting," fraudulent inducement, and damage to credit. Appellant sought damages from Fidelity that she claims were sustained as a result of misrepresentations made by Fidelity that a loan secured by a fraudulent signature was enforceable. Appellant requested the trial court to declare the loan agreement void and set aside the transfer of the property to Mark.

4

On March 11, 2013, Fidelity filed its first motion for summary judgment on traditional and no-evidence grounds challenging all elements of appellant's causes of action and claiming the affirmative defense of absolute privilege. On March 13, 2013, appellant amended her petition adding claims for forfeiture of principal and interest and declaratory judgment actions requesting that the lien be declared void and that the special warranty deed be set aside. The trial court granted Fidelity's motion on May 16, 2013. Fidelity filed a subsequent motion for summary judgment as to the claims appellant added in her amended petition arguing that appellant did not have standing and that her suit was barred by the statute of limitations. The trial court granted the motion without specifying the grounds and severed appellant's suit against Fidelity from her claims against Mark. This appeal followed.[6]

## II.    STANDARDS OF REVIEW

A party may move for summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

A no-evidence summary judgment is properly granted if the respondent does not bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a

---

[6] As this is a transfer case, under the rules of appellate procedure, we are bound by the transferring court's precedent. *See* TEX. R. APP. P. 41.3. Therefore, if we determine that the Austin Court of Appeals has determined an issue in conflict with our precedent, we will apply that court's precedent. *See id.*

5

scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting and citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)) (internal quotations omitted).

"A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict*." Id.* at 750–51. We consider the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *Mack Trucks, Inc.*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005)); *King Ranch, Inc.*, 118 S.W.3d at 751 (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)).

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). "[W]e take as true all evidence favorable to the non[-]movant, and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor." *Valence Operating Co.*, 164 S.W.3d at 661.

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a(c)); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671,

6

678 (Tex. 1979). A defendant seeking a traditional motion for summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of any affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v. Matagorda County*, 124 S.W.3d 350, 352 (Tex. App.—Corpus Christi 2003, no pet.). When reasonable people could not differ as to the conclusion to be drawn from the evidence, the matter is conclusively established. *Franks v. Roades*, 310 S.W.3d 615, 621 (Tex. App.—Corpus Christi 2010, no pet.) (citing *City of Keller*, 168 S.W.3d at 816).

## III. FIDELITY'S DEFENSES

By her second issue, appellant contends that the summary judgment was improper because the statute of limitations does not apply to her claims of declaratory judgment that the loan is void, and for forfeiture of principal and interest.[7]

### A. Declaratory Judgment that Loan is Void and Forfeiture of Principal and Interest

Appellant contends that her claims based on a void home-equity loan and for the return of principal and interest due to the failure of the lender to obtain the consent of each owner and each owner's spouse under section 50(a)(6)(A), article XVI of the Texas Constitution are not subject to any statute of limitations. Specifically, appellant argues that a violation of section 50(a)(6)(A), i.e., failing to acquire a spouse's consent, constitutes an "incurable infirmity," and the home-equity loan taken out in May 20, 2004 by Mark is void ab initio. Fidelity responds that because section 50(a)(6)(Q)(xi) provides

---

[7] Due to our disposition of this case based on the statute of limitations, we will not be addressing, as further explained below, appellant's third, fourth, and fifth issues to the extent that they involve her claims for declaratory judgment that the loan and deed are void and for forfeiture of principal and interest. *See* TEX. R. APP. P. 47.1.

7

a cure for any defects in acquiring a spouse's consent at the time the lien is created, the trial court properly concluded that the four-year residual statute of limitations applies to appellant's claims for declaratory judgment that the loan is void, declaratory judgment that the special warranty deed in favor of Mark is void, and for forfeiture of principal and interest.

In *In re Estate of Hardesty*, the home equity loan was closed July 23, 2004 and on June 10, 2011, the appellant, Hardesty, filed his original verified petition and application for a temporary restraining order in the district court alleging that the home equity loan did "not comply with section 50(a)(6), Article XVI of the Texas Constitution because the loan violates section 50(a)(6)(B), Article XVI of the Texas Constitution,' and sought a declaration from the district court that the loan and security instrument do not comply with Section 50(a)(6)(B)." 449 S.W.3d 895, 908 (Tex. App.—Texarkana 2014, no pet.). Hardesty contended "that a lien made in violation of the Texas Constitution is void, not voidable, and thus is not subject to any limitations period." *Id.* The lien holders responded that section 50(a)(6)(Q)(x) provided a cure provision; thus, the lien was merely voidable, not void. *Id.* at 909. The court of appeals, relying on *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013) and *Williams v. Wachovia Mortgage Corp.*, 407 S.W.3d 391, 391 (Tex. App.—Dallas 2013, pet. denied), agreed that because section 50(a)(6)(Q)(x) allowed a lien holder to cure a defect under section 50(a)(6)(B), the lien was merely voidable. 449 S.W.3d at 908. Thus, the Texarkana Court of Appeals held that because a lien that does not comply with section 50(a)(6)(B) is curable, a plaintiff seeking a claim based on a violation of that section is bound by the residual four-year statute of limitations. *Id.*

8

In *Williams*, the court of appeals, explained that a violation of section 50(a)(6) can be cured pursuant to section 50(a)(6)(Q)(x). *Williams*, 407 S.W.3d at 394–95. The court concluded that because a violation of section 50(a)(6) merely made the loan voidable and not void, the residual statute of limitations applies. *Id.* ("In Texas, when there is no express limitations period, the residual four-year statute of limitations described in section 16.051 of the Texas Civil Practice and Remedies Code applies."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West, Westlaw through 2015 R.S.) ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.").

We agree with the reasoning of the courts of appeals in *In re Estate of Hardesty* and *Williams* and the authority cited by those courts that a curable defect under section 50(a)(6) makes a lien voidable and not void ab initio. *See In re Estate of Hardesty*, 449 S.W.3d at 911; *Williams*, 407 S.W.3d at 397. And, under section 50(a)(6)(Q)(xi), the failure to acquire a spouse's initial consent to a home-equity loan is curable if that spouse subsequently consents to the lien; in that case, the lien holder does not forfeit all principal and interest. *See* TEX. CONST. art. XVI § 50(a)(6)(Q)(xi) (providing that "the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit . . . if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, *unless each owner and each owner's spouse who did not initially consent subsequently consents*") (emphasis added). Because the complained-of defect in this case is curable under section 50(a)(6)(Q)(xi), the loan at issue was merely voidable and not void. *See In re Estate of Hardesty*, 449 S.W.3d at 911; *Williams*, 407 S.W.3d at 395–97; *see also Brazzel v. Murray*, 481 S.W.2d

9

801, 803 (Tex. 1972) ("A void act is one entirely null within itself, not binding on either party, and which is not susceptible of ratification or confirmation. . . . *A voidable act . . . is binding until disaffirmed*, and . . . may be made finally valid by failure within proper time to have it annulled, or by subsequent ratification or confirmation.") (emphasis added); *Oles v. Curl*, 65 S.W.3d 129, 131 n.1 (Tex. App.—Amarillo 2001, no pet.) ("Simply put, if a supposedly void act can be validated then the act cannot actually be void.").

Therefore, appellant's argument that the loan is void ab initio fails because it is premised on her incorrect assumption that a violation of section 50(a)(6) cannot be cured. Contrary to appellant's assertions, a violation of section 50(a)(6)(A) can be cured as explained above. *See* TEX. CONST. art. XVI §§ 50(a)(6)(Q)(xi); *see also Williams*, 407 S.W.3d at 397 (explaining that the appellant's argument that section 50(a)(6)(A)'s consent requirement cannot be cured was undermined by the Texas Supreme Court's broad pronouncement that "section 50(a)(6)(Q)(x) is a cure provision that applies to all of section 50(a) and . . . operates as a cure provision that validates a lien securing a section 50(a)(6) extension of credit"). We cannot conclude, as appellant argues, that a claim alleging that a lender failed to acquire a spouse's consent to a home-equity loan is not subject to a statute of limitations.[8] *See id.* Instead, we conclude that the residual four-year statute of limitations applies to appellant's claim for declaratory judgment that the lien was void and for forfeiture of principal and interest.

Appellant does not argue, in the alternative, that if the residual four-year statute of limitations applies, she filed suit within that period.[9] Nonetheless, appellant filed her claim

---

[8] We note that "[t]he Texas Supreme Court has not written on this issue." *In re Estate of Hardesty*, 449 S.W.3d 895, 910 (Tex. App.—Texarkana 2014, no pet.).

[9] The loan documents were signed on May 20, 2004. Appellant filed her suit for declaratory judgment that the loan was void and for forfeiture of principal and interest on October 3, 2012—over eight

for declaratory judgment that the loan is void and for forfeiture of principal and interest eight years after the closing date of the allegedly deficient loan. Thus, appellant's claim is barred by the four-year residual statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051; *In re Estate of Hardesty*, 449 S.W.3d at 911; *Williams*, 407 S.W.3d at 398. We conclude that Fidelity conclusively established that it was entitled to summary judgment as a matter of law on those claims because they are barred by the statute of limitations.[10] We overrule appellant's second issue.[11]

## B. Declaratory Judgment that Special Warranty Deed is Void

In its motion for summary judgment, Fidelity argued, among other things, that the residual statute of limitations barred appellant's claim for declaratory judgment that the special warranty deed is void. On appeal, appellant does not challenge the trial court's granting summary judgment on that basis. "If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied); *see also John H. Carney & Associates v. Rosellini*, No. 13-13-00368-CV, 2015 WL 328211, at *5 (Tex. App.—Corpus Christi Jan. 22, 2015, no pet.) (mem. op.). Therefore, because appellant has not

---

years later.

[10] Appellant did not plead the discovery rule in this case. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in response to defendant's assertion of the defense as a matter in avoidance."). Moreover, appellant did not argue in her response to Fidelity's motion for summary judgment and does not argue on appeal that the discovery rule applies.

[11] Having determined that summary judgment was properly granted in favor of Fidelity on appellant's claims for declaratory judgment that the loan is void and for forfeiture of principal and interest, we need not address appellant's third and fourth issues as to those claims because those issues are not dispositive. *See* Tex. R. App. 47.1. Specifically, appellant argued in her third issue that she has standing to bring the above-mentioned claims and in her fourth issue appellant argued, among other things, that the doctrine of judicial estoppel did not bar the above-mentioned claims. *See id.*

11

challenged the trial court's grant of summary judgment on the basis that the statute of limitations barred her claim for declaratory judgment that the special warranty deed is void, we must affirm the summary judgment on that unchallenged ground.[12]  *See Jarvis*, 298 S.W.3d at 313.

## IV.    FRAUD IN A REAL ESTATE TRANSACTION

By her first issue, appellant challenges each possible basis for the trial court's granting of summary judgment in favor of Fidelity on her claim for fraud in a real estate transaction.[13]   Specifically, appellant claims that an issue of material fact exists regarding each of the elements challenged by Fidelity in its motion for no-evidence summary judgment and that Fidelity failed to prove as a matter of law that its affirmative defense of absolute privilege applies in this case.

In its March 11, 2013 motion for summary judgment, Fidelity alleged that it was entitled to no-evidence summary judgment on appellant's claims of fraud in a real estate transaction because there was no evidence that (1) Fidelity made a false representation of past or existing material fact; (2) the false representation or promise was made in order to induce appellant to enter into a contract; (3) appellant relied on the false representation or promise and entered into the transaction; and (4) the reliance caused her injury.  *See* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West, Westlaw through 2015 R.S.) (setting out the above-mentioned elements for fraud in a real estate transaction).  Thus, in order to

---

[12] Moreover, we need not address appellant's third issue arguing that she had standing to bring her claim for declaratory judgment that the special warranty deed is void, her fourth issue arguing that judicial estoppel did not bar her claim for declaratory judgment that the special warranty deed is void and her fifth issue to the extent she argues that she provided more than a scintilla of evidence to raise an issue of genuine fact regarding her claim for declaratory judgment that the deed is void because those issues are not dispositive of this appeal.  *See id.*

[13] On appeal, appellant has not challenged the summary judgment on her other claims of fraudulent filing of financing statement, securing the execution of a document by deception, common law fraud, negligent misrepresentation, aiding and abetting, and fraudulent inducement.

12

prevail, appellant had the burden to produce at least a scintilla of evidence showing, among other things, that a question of fact exists that Fidelity's statements in its application for foreclosure were false. *See id.*; TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc.*, 206 S.W.3d at 582.

Appellant alleges that when Fidelity filed its application for foreclosure and Whitley's affidavit, Fidelity falsely stated the following: (1) the property was secured by a debt owed by Mark and appellant; (2) Mark and appellant were both obligated to pay the debt; (3) the debt was secured by a lien created pursuant to Article XVI, section 50(a)(6) of the Texas Constitution; and (4) Mark and appellant were obligated by the terms of the home equity loan for 1.1 million dollars.[14]

Appellant's argument that Fidelity made false statements in its application for foreclosure is entirely premised on her claim that the original loan is void. However, as previously explained, we concluded that the statute of limitations had passed on appellant's claim for declaratory judgment that the loan was void. Thus, the loan is not void as appellant argued in the trial court and on appeal and was merely voidable. And, "[o]nce the limitations period . . . passed, a voidable [home-equity] lien becomes valid." *In re Estate of Hardesty*, 449 S.W.3d at 910. Here, the home-equity loan became valid when the four-year limitations period expired.[15] *See id.* Because appellant's arguments are entirely premised on an assumption that the loan is void and can be challenged at

---

[14] In addition, appellant argues that an issue of material fact exists concerning whether Fidelity made a false statement because there was evidence that Fidelity failed to disclose that the home equity loan was invalid after learning that her signature had been forged. However, appellant did not make this argument in her response to Fidelity's motion for summary judgment. Therefore, we may not reverse the judgment on that basis. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

[15] This is so even assuming that appellant did not sign the loan documents. *See re Estate of Hardesty*, 449 S.W.3d at 910.

13

any time, she has not argued that although the loan is valid, Fidelity's statements in the application for foreclosure were false.[16] And, given that the loan is valid, we cannot conclude that a question of fact remains regarding whether Fidelity's statements were false.

Accordingly, we conclude that the trial court properly granted summary judgment on appellant's claim of fraud in a real estate transaction. We overrule appellant's first issue.[17]

## V.    FINANCE CODE AND DTPA VIOLATIONS

By her fifth issue, appellant contends that the trial court improperly granted Fidelity's summary judgment because she brought forth more than a scintilla of evidence raising a genuine issue of material fact regarding each challenged element of her claims under the finance code and the DTPA. Appellant also argues that reliance is not an element of her claim under the finance code.

Under Chapter 392 of the Texas Finance Code, a debt collector is liable to a consumer for damages if the debt collector misrepresents the debt's status to the consumer in a judicial or governmental proceeding. TEX. FIN. CODE ANN. §§ 392.304(a)(8), 392.403 (West, Westlaw through 2015 R.S.). Specifically, section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial

---

[16] Appellant had the burden to explain in her response to appellant's summary judgment and on appeal how and why the statements were false. See TEX. R. CIV. P. 166a(i); Mack Trucks, Inc., 206 S.W.3d at 582 (explaining that burden shifts to non-movant to raise an issue of genuine fact).

[17] Because we have determined that one ground for the trial court's summary judgment was proper regarding appellant's claim of fraud in a real estate transaction, we need not address her issue contending that Fidelity failed to prove as a matter of law that its affirmative defense of absolute privilege applies in this case. See TEX. R. APP. P. 47.1.

14

or governmental proceeding[.]" *Id.* Moreover, a violation of chapter 392 is defined as a deceptive trade practice, which allows for a claim under the DTPA. *Id.* § 392.404(a) (West, Westlaw through 2015 R.S.).

Appellant alleges that Fidelity violated section 392.304 by misrepresenting the debt's status when it filed its application for foreclosure. Specifically, appellant argues that Fidelity misrepresented the status of the loan by stating that she was obligated by the terms of the home-equity loan.

However, Fidelity did not misrepresent *the status* of the loan because the loan was in default at the time that Fidelity filed its application for foreclosure. Moreover, because appellant had not challenged the validity of the loan within the four-year statute of limitations, the loan's validity could not be challenged in this cause. So, to the extent appellant argues that Fidelity falsely stated that she was obligated by the terms of the home-equity loan, her argument is without merit. Therefore, we conclude that the trial court properly granted Fidelity's motion for no-evidence summary judgment on appellant's claims for violations of the finance code and the DTPA. We overrule appellant's fifth issue.[18]

## VI. CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
24th day of November, 2015.

---

[18] Because we have concluded that summary judgment was proper regarding appellant's claims for finance code and DTPA violations, we need not address appellant's fourth issue claiming that summary judgment for these claims was improper because judicial estoppel did not apply. *See id.*

15